**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAMADA WORLDWIDE INC., a Delaware Corporation, | : : : : : : : : : : : : : | **OPINION** Civ. No. 11-896 (WHW) |
| Plaintiff, | | |
| v. | | |
| COURTNEY HOTELS USA, LLC, a Texas Limited Liability Company; CHRISTIAN COURTNEY, an individual; and JOHN COURTNEY, an individual, | | |
| Defendants. | | |

**Walls, Senior District Judge**

Plaintiff Ramada Worldwide Inc. ("RWI") moves for default judgment against Defendants Courtney Hotels USA, LLC ("Courtney Hotels") and Christian Courtney. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motion is decided without oral argument. RWI's motion for default judgment is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises from a franchise agreement entered between RWI and Courtney Hotels on August 14, 2008 for the operation of a 100-room guest lodging facility in Texas ("Facility"). Compl. ¶ 22, Ex. A. Moteles y Restoranes Maria Barbara S.A. DE C.V. ("Moteles") is principal of Courtney Hotels and Christian Courtney and John Courtney are principals of Moteles. Id. ¶¶ 3-7. Christian Courtney and John Courtney provided RWI with a guaranty of Courtney Hotel's obligations under the agreement. Id. ¶¶ 34-35, Ex. C. Under the agreement, Courtney Hotels

**NOT FOR PUBLICATION**

was obligated to operate the Facility as a Ramada hotel for 15 years.  Id. ¶ 23, Ex. A.  Courtney Hotels was also required to make periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively the "recurring fees").  Id. ¶ 24, Ex. A.  Courtney Hotels was also required to prepare and submit to RWI monthly revenue reports and maintain at the Facility accurate financial information for RWI to examine, audit, and copy.  Id. ¶¶ 26-27, Ex. A.  An addendum for connectivity equipment was also executed between the parties on August 14, 2008.  Id. ¶ 32, Ex. B.

RWI could terminate the agreement if Courtney Hotels failed "to pay any amount due RWI under the Franchise Agreement," "failed to remedy any other default of its obligations or warranties under the Franchise Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the Franchise Agreement," and/or "receipt of two or more notices of default under the Franchise Agreement in any one year period, whether or not the defaults were cured."  Id. ¶ 28, Ex. A.  Courtney Hotels agreed that if the agreement was terminated, it would pay liquidated damages to RWI according to a formula in the franchise agreement.  Id. ¶ 29, Ex. A.  The agreement also provided that if the agreement was terminated, Courtney Hotels would immediately cease using all of the Ramada marks in association with the operation and use of the Facility.  Id. ¶¶ 23, 30, Ex. A.  Additionally, the agreement provided that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts under the [Franchise] Agreement."  Id. ¶ 31, Ex. A.

Beginning in 2009, Courtney Hotels failed to timely meet its financial obligations under the agreement.  Id. ¶ 37.  RWI wrote to Courtney Hotels on September 4, 2009, advising it that it owed RWI $133,504.29 in recurring fees and was in breach of the agreement, it had 30 days to

**NOT FOR PUBLICATION**

cure the monetary default, and if the default was not cured the agreement would be subject to termination. Id. ¶ 38, Ex. D. On May 24, 2009, RWI again wrote to Courtney Hotels, advising it that it now owed $193,624.81 in recurring fees, it had 10 days to cure this monetary default, and if the default was not cured the agreement would be subject to termination. Id. ¶ 39, Ex. E. On July 8, 2010, RWI wrote to Courtney Hotels, informing it that the agreement had been terminated. Id. ¶ 40, Ex. F. This letter advised Courtney Hotels that it must discontinue and remove all indicia of operation, materials and marks identifying the facility as a Ramada, pay RWI liquidated damages in the amount of $203,490.44 for premature termination of the agreement and connectivity addendum as required under these agreements, and pay all outstanding recurring fees through the date of termination. Id., Ex. F. RWI alleges that despite the termination of the agreement and its requests that Courtney Hotels de-identify the facility, Courtney Hotels has continued to use Ramada Marks. Id. ¶¶ 42-45.

On February 17, 2011, RWI filed suit against Defendants alleging a violation of the Lanham Act and breach of contract. Id. ¶¶ 46-89. Courtney Hotels and Christian Courtney were served on March 17, 2011. ECF No. 4. John Courtney was dismissed from the case on December 7, 2011. ECF No. 8. Defendants did not appear in this action or answer the Complaint and RWI requested entry of default against Courtney Hotels and Christian Courtney, which was entered by the Clerk on March 12, 2011. ECF. No. 5.

RWI then moved for default judgment on December 23, 2011 in the amount of $816,749.84. Mot for Default J. This amount is comprised of (1) $254,133.34 for recurring fees owed under the agreement, (2) $256,475.24 for liquidated damages, (3) $298,498.05 for Lanham Act damages, and (4) $7,643.21 for attorneys' fees and costs. Id. RWI also moved for

**NOT FOR PUBLICATION**

permanent injunctive relief as to Defendants use of Ramada Marks or names or marks confusingly similar to the Ramada Marks and as to RWI's rights to de-identify the Facility.  Id.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).  Because the entry of default prevents a plaintiff's claims from being decided on the merits, "this court does not favor entry of defaults or default judgments." United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984).  Accordingly, the Third Circuit has clarified that, while "the entry of default judgment is left primarily to the discretion of the district court," this "discretion is not without limits," and cases should be "disposed of on the merits whenever practicable." Hritz, 723 F.2d at 1181 (citations omitted).  See also $55,518,05 in U.S. Currency, 728 F.2d at 194-95.

The Third Circuit considers three factors in determining "whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).  The court must, however, make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action'" and "must make an

NOT FOR PUBLICATION

independent determination "regarding questions of law." Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C., No. 06-1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007).

## DISCUSSION

### I. Jurisdiction

Before entering a default judgment as to a party "that has not filed responsive pleadings, a district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C., No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008). A default judgment entered without personal jurisdiction over the defendant is void. D'Onofrio v. Il Mattino, 430 F.Supp.2d 431, 436 (E.D. Pa. 2006).

#### A. Subject Matter Jurisdiction

Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332. RWI is a Delaware corporation, with its principal place of business in New Jersey. Compl. ¶ 1. Defendant Courtney Hotels is a limited liability company organized and existing under the laws of Texas, with its principal place of business in Texas, and Defendant John Courtney is a resident of Mexico. Id. ¶¶ 2, 4. The amount in controversy in the matter, exclusive of interests and costs, exceeds the sum of $75,000. Id. ¶ 8.

#### B. Personal Jurisdiction

This court possesses personal jurisdiction over Defendants. Proper service of process is required to establish personal jurisdiction over a defendant. Lampe v. Xouth, Inc., 952 F.2d 697, 700-01 (3d Cir. 1991). Summonses were returned executed on March 17, 2007. ECF No. 4. The franchise agreement includes a clause by which Courtney Hotels has consented "to the non-exclusive personal jurisdiction and venue in . . . the United States District Court for the District

NOT FOR PUBLICATION

of New Jersey," to which Christian Courtney, as guarantor, was personally bound. Compl. ¶¶ 10-11, Ex. A.

### II. Liability

Because a party seeking a default judgment is not entitled to such relief as a matter of right, the court may enter a default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." Nautilus Ins. Co. v. Triple C. Const. Inc., No. 10-2164, 2011 WL 42889, at *4 (D.N.J. Jan. 6, 2011).

#### A. Breach of Contract

RWI seeks a judgment of $816,749.84. Mot for Default J. Of this amount, $254,133.34 is for recurring fees due under the agreement and $256,475.24 is for liquidated damages. Id. RWI alleges that it is owed these amounts due to a breach of contract. Id. To properly make out a breach of contract claim, RWI must allege: (1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach. AT&T Credit Corp. v. Zurich Data Corp., 37 F. Supp. 2d 367, 370 (D.N.J. 1999). RWI has satisfied each of these elements. RWI alleges that it "entered into the Franchise Agreement with Courtney Hotels for the operation of a 100-room guest lodging facility." Compl. ¶ 22. Second, it alleges that the defendants breached the contract because they have failed to meet their financial obligations in accordance with the agreement. Id. ¶¶ 37-40. Third, RWI alleges damages relating to these claims totaling $510,608.58 because defendants have failed to pay the recurring fees and liquidated damages owed under the agreement. Fenimore Aff. ¶¶ 36, 44-45.

#### B. Lanham Act

RWI brings claims under §§ 32, 43(a), and 43(c) of the Lanham Act (codified at 15 U.S.C. §§ 1114, 1125(a), and 1125(c)). Compl. ¶ 47-56. The elements for claims under these

**NOT FOR PUBLICATION**

sections are the same where the argument is "that the defendant's use of a protected mark is causing confusion as to the affiliation of goods or services." Howard Johnson Intern., Inc. v. Vraj Brig, LLC, No. 08-1466, 2010 WL 215381, at *5 (D.N.J. Jan. 14, 2010). "To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin or the goods or services." Id.

RWI has satisfied each of these elements. RWI has adequately pleaded ownership of a valid and protectable mark because it alleges that it "has the exclusive right to sublicense the use of the service mark RAMADA and various related trade names, trademarks and service marks (certain of which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof . . . as well as the distinctive Ramada System." Compl. ¶ 14. RWI also alleges that "certain of the Ramada Marks are incontestable pursuant to 15 U.S.C. § 1065" and that the public has been given notice of the registration of the Ramada Marks pursuant to 15 U.S.C. § 1111. Id. ¶¶ 15-16. "Registration of a mark under § 2 of the Lanham Act . . . entitles the owner to a presumption that its mark is valid." Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209 (2000).

RWI also alleges that even though Defendants no longer have permission to use the Ramada Marks, they have continued to make use of the marks in connection with their lodging facility. Compl. ¶¶ 41-45. RWI further avers that such use "caused and is likely to continue to cause confusion or mistake among prospective or actual customers." Id. ¶ 48. Confusion exists where "the consumer viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994)

**NOT FOR PUBLICATION**

(quotations omitted).  Because RWI asserts that Defendants continued to use the Ramada Marks yet are no longer affiliated with RWI, RWI has adequately pleaded the possibility of confusion and made out a claim for trademark infringement.

> III.   **Propriety of Entry of Default Judgment**

RWI has properly served Defendants with process, the Clerk of the Court has entered default against them, and RWI has established legitimate causes of action for breach of contract and violations of the Lanham Act.  The Court now determines whether default judgment is appropriate by evaluating: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct."  Chamberlain, 210 F.3d at 164.

If a default judgment is not entered, RWI will continue to be harmed "because [it] will not be able to seek damages for [its] injuries due to defendant's continuing refusal to" participate in this case.  Newman v. Axiom Worldwide, No. 06-5564, 2010 WL 2265227, at *5 (D.N.J. June 2, 2010).  Furthermore, the amounts owed on the recurring fees and the liquidated damages are subject to interest.  Defendants will owe RWI more money the longer it does not receive payment, causing additional harm.  See Howard Johnson, 2011 WL 2148575, at *4.

Defendants have not filed anything with the Court.  Defendants have offered no defense, and the facts asserted in the complaint do not contain any information that could provide the basis for a meritorious defense.  The Court assumes that the Defendants have no litigable defenses available.  Rose Containerline, Inc. v. Omega Shipping Co., No. 10-4345, 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011) (citing Carpenters Health & Welfare Fund of Phila. v. NDK Gen. Contractors, Inc., No. 06-3238, 2007 WL 1018227, at *5 (E.D. Pa. Mar. 27, 2009) (finding that because defendant had filed no responsive pleading to the plaintiff's complaint, and

the record did not indicate any litigable defense, the court must presume the defendant had none).

The Third Circuit has defined culpable conduct as "conduct that is taken willfully or in bad faith." Hill v. Williamsport Police Dept., 69 F. App'x 49, 52 (3d Cir. 2003) (quotations omitted). "Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc., 175 F. App'x 519, 523 (3d Cir. 2006) (citation omitted). Here, Defendants have disregarded all communications from RWI. Nor does the record suggest any good faith justification for Defendants' failure to respond. There is no evidence before the Court "that defendants' failure to respond to plaintiff's complaint was caused by anything other than defendants' own culpability and willful negligence." Platypus Wear, Inc. v. Bad Boy Club, Inc., No. 08-2662, 2009 WL 2147843, at *5 (D.N.J. July 15, 2009). The Court presumes that Defendants acted culpably because they have "failed to answer, move, or otherwise respond." Stonebridge Bank v. Nita Props., LLC, No. 09-5145, 2011 WL 380759, at *6 (D.N.J. Jan. 31, 2011).

**IV.    Damages and Other Relief**

RWI request a default judgment in the amount of $816,749.84. This amount is comprised of (1) $254,133.34 for recurring fees owed under the agreement, (2) $256,475.24 for liquidated damages, (3) $298,498.05 for Lanham Act damages, and (4) $7,643.21 for attorneys' fees and costs.

The only allegations in a plaintiff's complaint not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). Under Rule 55(b)(2), a district court "may conduct such hearing

**NOT FOR PUBLICATION**

or order such references as it deems necessary and proper" in order "to determine the amount of damages." There are certain limited situations, however, where a district court can enter a final judgment without requiring further evidence of damages. Ramada Worldwide Inc. v. ERS Investments Inc., Civ. No. 07-1095, 2008 WL 163640, at *6 (D.N.J. Jan. 16, 2008) (citing KPS Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003). First, if the damages are for a "sum certain or for a sum which can by computation be made certain," a further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); Comdyne I, 908 F.2d at 1149. A claim for damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." Ramada Worldwide Inc., 2008 WL 163640, at *6 (quoting KPS Assocs., 318 F.3d at 19). "Such situations include actions on money judgments, negotiable instruments, or similar situations where the damages sought can be determined without resort to extrinsic proof." Id. (quoting KPS Assocs., 318 F.3d at 19-20 (internal quotations omitted)). Second, claims for liquidated damages also do not require further evidentiary inquiry. Id. (citing KPS Assocs., 318 F.3d at 20). Here, RWI's requests for recurring fees and liquidated damages owed under the agreement are for sums certain and will be awarded by the Court. Fenimore Aff. ¶¶ 36, 44-45. The liquidated damages are for an agreed upon amount and the recurring fees can be computed by formulas specified in the franchise agreement. Id.

As to Lanham Act damages, Section 35 of the Lanham Act allows a victorious plaintiff to recover, inter alia, "any damages sustained by the plaintiff." 15 U.S.C. § 1117(a). Additionally, a court may treble the actual damage award if the infringement is intentional. Id. Some courts have awarded damages based on the amount of royalties the defendant would have paid during the infringement period under the now-terminated licensing agreement. Ramada Worldwide

**NOT FOR PUBLICATION**

Inc., v. ERS Investments Inc., No. 07-1095, 2008 WL 163640, at * 7 (D.N.J. Jan. 16, 2008) (citing A&H Sportswear Co. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 208-09 (3d Cir. 1999) (en banc)).  Here, the Lanham Act damages were calculated by multiplying the average monthly recurring fees that Defendants owed RWI over "the eighteen months prior to termination in which Defendants reported the Gross Room Revenues of the Facility to RWI" by the number of months that Defendants have infringed the Ramada Marks.  Fenimore Aff. ¶ 47. RWI alleges that the average monthly recurring fees owed by Defendant would have been $6,633.29 and the number of months of infringement was fifteen months, resulting in a total of $99,499.35.  Id.  This number was then tripled because RWI alleges that the violation was deliberate and willful and seeks treble damages under the Lanham Act.  Id.  See 15 U.S.C. 1117(a).  In the absence of better evidence to prove lost royalties, RWI's calculations for infringement damages based on average recurring fees incurred by Defendants on their reported gross room revenue are acceptable.  RWI has also shown that Defendants intentionally infringed the Ramada Marks, because Defendants continued to use Ramada Marks despite receiving cease and desist letters from RWI.  Accordingly, the Court grants RWI's request for Lanham Act damages in the amount of $298.498.05.

RWI also requests permanent injunctive relief as to Defendants' use of Ramada Marks or names or marks confusingly similar to Ramada Marks and as to RWI's rights to de-identify the Facility.  Section 43(c) of the Lanham Act provides that "the owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark…" 15 U.S.C. § 1125(c).  See also 15 U.S.C. § 1116(a).  To grant a permanent

**NOT FOR PUBLICATION**

injunction, the court must consider whether: "(1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." Gucci America, Inc. v. Daffy's, Inc., 354 F.3d 228, 336-37 (3d Cir. 2003).

      First, as discussed, RWI has established a cause of action under the Lanham Act. Second, RWI alleges that Defendants' acts of infringement "have inflicted and continue to inflict irreparable harm on RWI." Compl. ¶ 54.  Courts have found that trademark infringement "amounts to irreparable injury as a matter of law." Platypus Wear, Inc., 2009 WL 2147843, at *8 (citing S & R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 378 (3d Cir. 1992).  Third, Defendants' use of RWI's marks is causing harm to RWI.  Any greater harm brought upon Defendants by a permanent injunction is due to Defendants' improper use of RWI's marks. See Platypus Wear, Inc., 2009 WL 2147843, at *8 (finding that although defendants might suffer economic losses if a permanent injunction is issued, defendants "would not have been subjected to such harm had they not improperly used plaintiff's marks").  Fourth, a permanent injunction would be in the public interest.  In a trademark case, public interest is often defined as "the right of the public not to be deceived or confused." Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 197 (3d Cir. 1990).  RWI has adequately pleaded the possibility of consumer confusion.  The Court grants RWI's request for permanent injunctive relief against Defendants.

      Under section 17.4 of the franchise agreement, the prevailing party in an action to enforce the agreement or collected amounts owed under it is entitled to recover "all costs and expenses, including reasonable attorneys' fees" from the non-prevailing party.  Compl. ¶ 31, Ex. A.

**NOT FOR PUBLICATION**

Attorneys' fees clauses are enforceable in New Jersey.  Howard Johnson Intern., Inc. v. Patel, No. 11-918, 2011 WL 2148575, at *3 (D.N.J. May 31, 2011) (citation omitted).  Rule 54 of the Federal Rules of Civil Procedure provides that "costs – other than attorney's fees – should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  Because RWI has submitted supporting documentation, its request for attorneys' fees and costs will be granted.  Mot. for Default J., Ex. B., Couch Certification, ¶¶ 9-11.

## CONCLUSION

RWI's motion for default judgment is granted.

s/ William H. Walls
United States Senior District Judge
